Lynette ANDERSON, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (PENNSYLVANIA
HOSPITAL), Respondent.

Pennsylvania Hospital, Petitioner,

v.

Workers' Compensation Appeal Board
(Anderson), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 2, 2003.
Decided Aug. 15, 2003.

Stacey M. Merkin, Philadelphia, for petitioner.

John D. Pallante, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Both Lynette Anderson (Claimant) and Pennsylvania Hospital (Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board) which reversed the decision of a Workers' Compensation Judge (WCJ) granting Claimant's Review Petition and affirmed the decision of the WCJ denying Employer's Termination/Suspension/Modification Petition and Review Petition. We reverse that part of the Board's order which affirmed the WCJ's denial of Employer's Review Petition and affirm the order of the Board in all other respects.

Pursuant to a Notice of Compensation Payable (NCP), Claimant began receiving compensation benefits for an injury described as right medial epicondylitis [1] and right carpal tunnel syndrome that occurred on November 13, 1998 as the result of lifting objects at work. Thereafter, on October 18, 1999, Employer filed a Termination/Suspension/Modification Petition alleging that as of September 13, 1999 Claimant has fully recovered and is able to return to unrestricted work. Claimant filed an Answer denying the allegations set forth in Employer's Petition. On December 20, 1999, Claimant filed a Review Petition asserting that the NCP should be amended to include a left hand carpal tunnel injury. On August 8, 2000, Employer filed a Review Petition alleging that the right epicondylitis injury should be removed from the NCP because this was a pre-existing condition as evidenced by the testimony of both Claimant and her medical expert. Thereafter, hearings were held before the WCJ.

Claimant testified that at the time of the injury she had worked for Employer for approximately twenty years. Most recently, Claimant worked as a technician at a DTI machine in the central processing and distribution department. The DTI machine washes and sterilizes dirty sets of instruments from the operating room (OR). After washing, the clean OR set comes out of the machine for the waiting technician who reassembles the set and makes sure it is clean. At this time, however, the OR set is hot and must be allowed to cool. Claimant testified that on the day of the injury the DTI machine sent out another OR set before the previous one had finished cooling. So, she grabbed the hot OR set so that the cooling OR set would not be knocked onto the ground. By doing this, Claimant burned her hands. Afterwards, Claimant began experiencing pain radiating down her arm. Claimant missed work as a result of this injury but eventually returned to a light-duty position with Employer. However, Claimant stopped working at this job because the tasks she was required to perform caused her hand and elbow to hurt and also caused her hand to swell. Claimant then returned to another light-duty job with Employer at the welcome desk of the hospital. Claimant did not have trouble performing this job but Employer did not keep her in this position. Rather, Employer hired a vocational counselor to find her a light-duty job with another employer. The WCJ accepted the testimony of Claimant as credible.

John Meehan, a vocational counselor, testified on behalf of Employer. Mr. Mee-

---

1. Medial epicondylitis is soreness of the elbow.

han stated that it was his understanding that Claimant was capable of performing a light-duty job, which would include lifting up to twenty pounds. Mr. Meehan testified that he identified numerous jobs that would be suitable for Claimant and informed Claimant that these jobs were available. He also stated that David J. Bozentka, M.D. approved these jobs as being within Claimant's physical capabilities.

Employer also presented the testimony of Dr. Bozentka, a board-certified orthopedic surgeon who treated Claimant from November of 1997 to May 3, 1999. His review of Claimant's records revealed that Claimant injured her right elbow in a July 14, 1997 automobile accident. Dr. Bozentka concluded that the November 13, 1998 work-related accident did not materially contribute to Claimant's pre-existing medial epicondylitis and carpal tunnel syndrome. In addition, even if the November 13, 1998 work-related accident exacerbated these pre-existing injuries, Dr. Bozentka testified that Claimant had returned to her pre-injury baseline condition by the time of his May 1999 examination. (N.T. 5/17/2000, p. 25). Dr. Bozentka also testified that he reviewed the jobs that Mr. Meehan found were available and concluded that Claimant was physically capable of performing these jobs. (N.T. 5/17/2000, pp. 30–31).

In support of its petitions, Employer also presented the testimony of Donald F. Leatherwood, M.D., a board-certified orthopedic surgeon who examined Claimant on September 13, 1999. He took Claimant's history, which revealed that she burned her hands on November 13, 1998 and that, as a result of this injury, she experiences numbness and tingling in her index, long and middle fingers. She also reported that she had injured her elbow a year earlier and that the pain in her elbow

had recurred. After examining Claimant, Dr. Leatherwood concluded that she sustained a possible minor superficial burn during the November 13, 1998 work-related accident and a possible sprain/strain injury to her elbow. In addition, he opined that at the time of this accident Claimant suffered from the underlying injuries of bilateral carpal tunnel syndrome and medial epicondylitis of the right elbow but that the work-related injury did not materially contribute to these pre-existing injuries. (N.T. 3/29/2000, p. 31). He also concluded that Claimant has fully recovered from the injuries she sustained in the November 13, 1998 work-related accident. (N.T. 3/29/2000, pp. 21–22).

Employer also presented the testimony of John S. Taras, M.D., a board-certified hand surgeon who first examined Claimant on September 7, 1999. He took Claimant's history and reviewed her medical records, which revealed that Claimant was diagnosed with carpal tunnel syndrome before the November 13, 1998 work-related accident. (N.T. 4/17/2000, p. 27). He also opined that Claimant's medial epicondylitis pre-existed the November 13, 1998 work-related accident and that Claimant has fully recovered from any injury she sustained in that accident. (N.T. 4/17/2000, p. 25).

Employer also presented the testimony of Karen Aryes, who is a claim representative for ARCAP, which is Employer's third-party insurance administrator. Ms. Aryes explained that the right epicondylitis injury was placed on the NCP as a result of a clerical error. She also testified that the description of the injury in the temporary NCP was inflammation of the right arm. The WCJ accepted the testimony of Ms. Ayres as credible.

In support of her Petitions, Claimant presented the testimony of George Rodriguez, M.D., who is board-certified in physi-

cal medicine and rehabilitation. Dr. Rodriguez began treating Claimant on June 17, 1999. He testified that Claimant suffers from both right and left carpal tunnel syndrome and right medial epicondylitis. Dr. Rodriguez concluded that these injuries were caused by Claimant performing repetitive tasks at work. (N.T. 7/12/2000, pp. 32–34). With regard to the jobs that Mr. Meehan identified as being available for Claimant, Dr. Rodriguez testified that he reviewed the descriptions of these jobs and he concluded that Claimant is not physically capable of performing any of these jobs, primarily because of the right carpal tunnel syndrome injury. (N.T. 7/12/2000, pp. 47–48). Dr. Rodriguez further testified that Claimant has been suffering from right carpal tunnel syndrome for some time and that even if some of the available jobs could be performed with the left hand, this would not be advisable because she would then "cause a problem with the left side while avoiding the right carpal tunnel syndrome. There's no advantage to doing that in her particular case." (N.T. 7/12/2000, p. 52).

■ The WCJ issued a decision and order dated March 18, 2001. The WCJ found that his review of the testimony of Dr. Bozentka, Dr. Taras and Dr. Leatherwood revealed that they are generally in agreement as to Claimant's diagnosis as stated by Dr. Rodriguez. However, the WCJ accepted Dr. Rodriguez's evaluation of Claimant's condition because his opinion was supported by Claimant's medical history and the diagnostic tests. The WCJ concluded that Employer failed to meet its burden of proof with regard to the Termination/Suspension/Modification Petition

and also failed to meet its burden of proving that right medial epicondylitis was incorrectly listed in the NCP. The WCJ also concluded that Claimant met her burden of proving that she suffers from left carpal tunnel syndrome as a result of the work-related accident of November 13, 1998. Accordingly, the WCJ denied Employer's Termination/Suspension/Modification Petition and Review Petition and granted Claimant's Review Petition to add left carpal tunnel syndrome to the description of work injuries. Employer appealed to the Board, which reversed that part of the WCJ's decision granting Claimant's Review Petition and adding left carpal tunnel to the description of work injuries and affirmed the decision of the WCJ in all other respects. The appeals of Claimant and Employer to this Court followed.[2]

On appeal, Claimant argues that the Board erred as a matter of law by concluding that Claimant failed to prove that the NCP contained a material mistake of fact and that it should be amended to add a left carpal tunnel injury.

■ Section 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 771, provides that:

> A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

The second paragraph of Section 413(a), 77 P.S. § 772, also provides that:

> ... no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition ...

The burden of proof is on the party seeking to modify the NCP to establish that a material mistake of fact or law was made at the time the NCP was issued. *Birmingham Fire Insurance Company v. Workmen's Compensation Appeal Board (Kennedy)*, 657 A.2d 96, 99 (Pa.Cmwlth. 1995). "This court has held that a WCJ may modify a NCP under this provision *only* if a material mistake was made at the time the NCP was issued." *Zippo Manufacturing Co. v. Workers' Compensation Appeal Board (Louser)*, 792 A.2d 29, 32 (Pa.Cmwlth.2002) emphasis in original; citing *Borough of Honesdale v. Workmen's Compensation Appeal Board (Martin)*, 659 A.2d 70 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 543 Pa. 698, 670 A.2d 144 (1995).

■ In Conclusion of Law No. 4, the WCJ stated that Claimant "has met the burden of proof necessary to establish that [she] suffered left carpal tunnel syndrome as a result of her employment injury of November 13, 1998." However, Claimant's medical expert, which the WCJ accepted as credible, did not testify that Claimant suffers from left carpal tunnel syndrome as a result of any injury that occurred on November 13, 1998. Rather, he testified that Claimant suffers from left carpal tunnel syndrome as a result of years of performing repetitive tasks at work. Therefore, his testimony cannot support a finding that the NCP was in any material respect incorrect when it failed to list left carpal tunnel syndrome as an injury that occurred at work on November 13, 1998. *Zippo*. In order to receive benefits for this injury, Claimant would have to file a timely Claim Petition, i.e. within three years of the most recent payment of compensation benefits, alleging that she suffers from this injury. Therefore, the Board did not err by reversing this aspect of the WCJ's decision.

On appeal, Employer argues that: 1) the WCJ erred by denying Employer's Review Petition seeking to remove right medial epicondylitis from the NCP because Claimant's medical expert, which the WCJ found credible, testified that the November 13, 1998 work-related accident could not have caused medial epicondylitis and because Ms. Ayres testified that this injury was mistakenly placed in the NCP, 2) Claimant never filed a Claim Petition alleging a repetitive injury and the WCJ exceeded his authority by offering relief not sought by Claimant and which Employer did not have notice or an opportunity against which to defend, 3) the WCJ erred by denying the Termination Petition because Dr. Rodriguez did not testify that Claimant's ongoing symptoms are the result of the November 13, 1998 work-related accident and 4) the WCJ erred by denying the Suspension/Modification Petition because Employer presented evidence of available jobs that Claimant was capable of performing.

■ First, we must address whether the WCJ erred by denying Employer's Review Petition seeking to strike the right medial epicondylitis injury from the NCP. A review of the record reveals that, like the left carpal tunnel injury, Dr. Rodriguez did not testify that Claimant's right medial epicondylitis was caused by any incident at work on November 13, 1998. Also, Claimant herself testified that she only burned her hands as a result of this work-related accident. Furthermore, Ms. Ayres testified

that the right medial epicondylitis injury was mistakenly listed on the NCP. Thus, it is clear that the NCP did contain a material mistake of fact at the time it was issued. Accordingly, the order of the Board is this regard is reversed and the NCP is amended to remove right medical epicondylitis from the description of injuries.

Next, Employer argues that Claimant never filed a Claim Petition alleging a repetitive injury and that the WCJ exceeded his authority by offering relief not sought by Claimant and which Employer did not have notice or an opportunity against which to defend. With regard to the left carpal tunnel injury, we resolved this issue above by holding that the Board correctly reversed the WCJ's decision granting Claimant's Review Petition. Therefore, the left carpal tunnel syndrome injury has been removed from the list of injuries in the NCP.

■ With regard to the right carpal tunnel syndrome injury, Employer argues in its brief that based on the testimony of Dr. Rodriguez, it is evident that Claimant's right carpal tunnel syndrome was not caused by any incident at work on November 13, 1998 and that Claimant should therefore not receive benefits for this injury. Furthermore, Employer argues that because Claimant never filed a claim petition for this injury, the statute of limitations for this injury has expired. We disagree. Employer issued a NCP recognizing that Claimant sustained an injury on November 13, 1998 in the nature of right carpal tunnel syndrome and never filed a Review Petition seeking to remove this injury from the NCP. As such, Employer is obligated to pay Claimant compensation benefits for this injury. It would be fundamentally unfair to Claimant for Employer to acknowledge this injury through the issuance of the NCP and then, after the statute of limitations has

expired, attempt to remove this injury from the NCP and then assert that Claimant cannot file a Claim Petition because the statute of limitations has expired. If Employer did not believe it was obligated to pay benefits related to this injury, it should have filed a timely Review Petition. Therefore, we reject Employer's argument in this regard.

■ Next, Employer argues that the WCJ erred by denying its Termination Petition. In a termination proceeding, the burden of proof is on the employer to establish that the claimant has fully recovered from his work-related injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 327, 705 A.2d 1290, 1293 (1997). The employer meets this burden when its medical expert "unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Id.*

■ Based on our resolution of the previous issues, the only injury that Claimant suffers from and is entitled to receive compensation benefits for is right carpal tunnel syndrome. Based on the testimony of Dr. Rodriguez, which the WCJ accepted as credible, it is evident that Claimant continues to suffer from this injury. As such, Employer would clearly not be entitled to a Termination of Benefits with regard to this injury. Therefore, the last dispute we must resolve is whether Employer is entitled to a suspension or modification of Claimant's benefits.

For injuries occurring after June 24, 1996, which is the date that Act 57 was enacted, Section 306(b)(2) of the Act allows an employer to attempt to modify a claim-

ant's benefits based on an earning power assessment:

(2) Earning power shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply. If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by an expert approved by the department and selected by the insurer.

77 P.S. § 512(2). The relevant regulation promulgated by the Department of Labor and Industry, Bureau of Workers' Compensation, provides that:

3. Section 306(b)(3) provides that:
   (3) If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:
   (i) The nature of the employe's physical condition or change of condition.
   (ii) That the employe has an obligation to look for available employment.

(a) For claims for injuries suffered on or after June 24, 1996, if a specific job vacancy exists within the usual employment area within this Commonwealth with the liable employer, which the employee is capable of performing, the employer shall offer that job to the employee prior to seeking a modification or suspension of benefits based on earning power.

(b) The employer's obligation to offer a specific job vacancy to the employee commences when the insurer provides the notice to the employee required by section 306(b)(3) of the act (77 P.S. § 512(b)(3)) [3] and shall continue for 30 days or until the filing of a Petition for Modification or Suspension, whichever is longer. When an insurer files a Petition for Modification or Suspension which is not based upon a change in medical condition, the employer's obligation to offer a specific job vacancy commences at least 30 days prior to the filing of the petition.

(c) The employer's duty under subsections (a) and (b) may be satisfied if the employer demonstrates facts which may include the following:

(1) The employee was notified of a job vacancy and failed to respond.

(2) A specific job vacancy was offered to the employee, which the employee refused.

   (iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.
   (iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.
   77 P.S. § 512.

(3) The employer offered a modified job to the employee, which the employee refused.

(4) No job vacancy exists within the usual employment area.

34 Pa.Code § 123.301 (emphasis added).

▮ We also note that the principles regarding job availability under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987) are still viable. "In *Kachinski* it was held that an employer need not specify every aspect of every proposed job, but it did have to provide medical evidence describing the claimant's capabilities, vocational evidence classifying the level of exertion and a basic description of the job in question. The Court deems the *Kachinski* standards to apply to job offers that are required to be made by an employer under the new provisions of Section 306(b)(2)." *Hoover v. Workers' Compensation Appeal Board (Harris Masonry, Inc.)*, 783 A.2d 886, 890 (Pa.Cmwlth.2001). Pursuant to *Kachinski*, the burden of proof is on the employer to show that the claimant's condition has changed and that the claimant has been referred to a then available job that he is physically capable of performing. The burden of proof then shifts to the claimant to demonstrate that he responded to the job offer in good faith. If the claimant does not exercise good faith, then his benefits can be modified. *Id.* at 252, 532 A.2d at 379.

▮ Dr. Rodriguez testified that the jobs identified by Mr. Meehan were not within Claimant's physical capabilities because they all required repetitive movement which Claimant cannot perform, primarily because of her right carpal tunnel injury. The WCJ accepted this testimony as credible, and we may not overturn this credibility determination on appeal. Therefore, because Employer failed to pro-vide any credible evidence of jobs that Claimant is physically capable of performing, it failed to prove that Claimant has an earning power upon which to base a suspension or modification of benefits. Therefore, the Board did not err by affirming the decision of the WCJ denying Employer's Suspension/Modification Petition.

Accordingly, the order of the Board is reversed in part and affirmed in part for the reasons set forth above.

### ORDER

AND NOW, August 15, 2003, the order of the Workers' Compensation Appeal Board docketed at A01–1049 and dated May 2, 2002 is hereby AFFIRMED in part and REVERSED in part for the reasons set forth in the foregoing opinion.

Jurisdiction relinquished.